Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| KEISHMER TORRES ANDINO<br><br>Recurrente<br><br>V.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrido | TA2025RA00354 | *Revisión de Decisión Administrativa* procedente del Departamento de Corrección y Rehabilitación<br><br>Caso Núm.: Q-344-25<br><br>Sobre: Solicitud Bonificaciones de Estudio y Trabajo en el Mínimo de Sentencia |
| --- | --- | --- |

Panel integrado por su presidenta; la Juez Lebrón Nieves, el Juez Pagán Ocasio y la Jueza Álvarez Esnard

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 26 de enero de 2026.

El 17 de noviembre de 2025, compareció ante este foro revisor, el señor Keishmer Torrens Andino (en adelante, señor Torrens Andino o parte recurrente), a través de su representación legal, mediante *Recurso de Revisión Administrativa.* Por medio de este, nos solicita que revisemos la *Respuesta al Miembro de la Población Correccional,* emitida el 23 de julio de 2025 y notificada el 1 de agosto de 2025, por la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación (en adelante, DCR o parte recurrida). En virtud de esta, el DCR determinó que, le acreditarían las bonificaciones conforme al Reglamento de Bonificación al máximo de su sentencia.

Por los fundamentos que se exponen a continuación, se *confirma* la determinación recurrida.

**I**

Conforme se desprende del recurso ante nuestra consideración, por hechos que se remontan al 4 de diciembre de 2016, y luego de celebrado un juicio, el señor Torrens Andino fue sentenciado por el Tribunal de Primera Instancia, el 28 de octubre de 2019.[1] Según surge de los documentos que acompañan el recurso, el recurrente se encuentra bajo custodia del DCR y extingue penas de forma consecutiva como sigue: asesinato en primer grado, Artículo 93 (A) del Código Penal de Puerto Rico, 33 LPRA 5142 (99 años); y violación a los Artículos 5.04 (20 años), 5.05 (6 años) y 5.15 (10 años) de la derogada Ley de Armas Núm. 404-2000.[2]

El 24 de junio de 2025, el señor Torrens Andino presentó una *Solicitud de Remedio Administrativo*.[3] En síntesis, el recurrente se amparó en el Artículo 308 de la Ley 85-2022, *infra*, para suplicar que se le acreditaran las bonificaciones por estudio y trabajo en el cómputo mínimo de su sentencia. Alegó que los cambios en la ley justificaban la aplicación de las bonificaciones según solicitado.

El 23 de julio de 2025, el DCR emitió su *Respuesta al Miembro de la Población Correccional*.[4] El aludido documento aunque de difícil lectura, dispone que, el 2 de noviembre de 2023, se realizó una nueva liquidación de sentencia que la parte recurrente firmó. Además que, el caso sería considerado para identificar

---

[1] Véase, Entrada 1, *Recurso de revisión administrativa*, pág. 3, en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC-TA).

[2] *Íd.* También, véase, Entrada 1, Apéndice 3 del recurso, Anejo VI, pág. 11, SUMAC-TA. *Hoja de control sobre liquidación de sentencias.*

[3] Véase, Entrada 1, Apéndice 3 del recurso, Anejo V, págs. 9-10, SUMAC-TA. *Solicitud de Remedio Administrativo*. La solicitud muestra en manuscrito la fecha del 18 de junio de 2025 al lado del encasillado del *Nombre y Fecha del Miembro de la Población Correccional* y la fecha del 24 de junio de 2025 al lado del encasillado para la firma del *Nombre del Evaluador*. También, véase, Entrada 1, Apéndice 3 del recurso, Anejo I, pág. 1. Determinaciones de Hechos de la *Respuesta al miembro de la población correccional*, emitida por el DCR el 6 de octubre de 2025. El número de remedio administrativo es el Q-344-25.

[4] Véase, Entrada 1, Apéndice 3 del recurso, Anejo IV, págs. 7-8, SUMAC-TA. La *Respuesta del área concernida / Superintendente* tiene fecha en manuscrito del 11 de julio de 2025 y sello del DCR, División de remedios administrativos Bayamón, del 22 de julio de 2025. La *Respuesta al miembro de la población correccional* muestra la fecha del 23 de julio de 2025.

bonificaciones aplicables y que, si la parte recurrente realiza trabajo o estudios "[...]se le acreditarán los días conforme al reglamento de bonificación". El recurrente fue notificado de esta determinación el 1 de agosto de 2025.[5]

Inconforme, el 11 de agosto de 2025, la parte recurrente incoó *Solicitud de Reconsideración*[6] para peticionar que se revisara la aplicabilidad de la bonificación por estudio y trabajo a la luz de la Ley 85-2022, *infra* y la eliminación del término "años naturales" que presentaba la legislación anterior. Reiteró la aplicación del Artículo 308 de la Ley 85-2022 a su caso. Concluyó su escrito como sigue:

> [...] Aunque el Reglamento de Bonificación de 2020 establece que, para los casos de asesinato en primer grado, el mínimo debe cumplirse [*ilegible*] años naturales, dicha disposición quedó inoperante a raíz de la Ley 85-2022, [*ilegible*] eliminó ese requisito de cumplimiento en años naturales. Por todo lo anterior, solicito que se acrediten las bonificaciones de estudio y trabajo al mínimo de mi sentencia[...]

El 25 de agosto de 2025, el DCR emitió su *Respuesta de Reconsideración al Miembro de la Población Correccional.*[7] Mediante esta determinación, acogió la petición de reconsideración del señor Torrens Andino.

El 6 de octubre de 2025, el DCR emitió su *Resolución* en la cual esbozó las siguientes determinaciones de hechos:

1.  El recurrente present[ó] Solicitud de Remedios Administrativos el 24 de junio de 2025 ante la Evaluadora de Remedios Administrativos, Carmen Montañez Mart[í]nez de la Oficina de Bayamón. En su escrito solicita se le otorguen bonificaciones adicionales por estudio y trabajo conforme a la Ley 85-2022.

2.  El 24 de junio de 2025 la Sra. Carmen Montañez Mart[í]nez, Evaluadora Remedios Administrativos,

---

[5] Véase, Entrada 1, *Recurso de revisión administrativa*, pág. 3, SUMAC-TA, y Apéndice 3 del recurso, Anejo I, pág. 1. Determinaciones de Hechos de la *Respuesta al miembro de la población correccional*, emitida por el DCR el 6 de octubre de 2025 en donde se indica que el recurrente fue notificado de esta determinación el 1 de agosto de 2025.

[6] Véase, Entrada 1, Apéndice 3 del recurso, Anejo III, págs. 5-6, SUMAC-TA. *Solicitud de Reconsideración.* La solicitud muestra en manuscrito la fecha 7-agosto-2025 al lado del nombre y firma del recurrente y 8-11-25 al lado de la firma del funcionario.

[7] Véase, Entrada 1, Apéndice 3 del recurso, Anejo II, págs. 3-4, SUMAC-TA. *Respuesta de Reconsideración al miembro de la población correccional.*

Oficina de Bayamón realiza Notificación al Sr. Elvis Sánchez López, Supervisor Área Sociopenal, Anexo Máxima Seguridad Bayamón 292.

3. Se recibe respuesta por parte de la Sra. Sra. [sic.] Nitza Lozada, Supervisora Regional, Oficina de Programas y Servicios de la Región Norte el 22 de julio de 2025.

4. La Sra. Carmen Montañez Montañez [sic.], Evaluadora de Remedios Administrativos se prepara repuesta al miembro de la población correccional el 23 de julio de 2025.

5. El 1 de agosto de 2025 se hace la entrega al recurrente del Recibo de Respuesta.

6. El 11 de agosto de 2025, el recurrente inconforme con la respuesta emitida, presentó Solicitud de Reconsideración ante el Coordinador Regional de Remedios Administrativos. En síntesis, arguye que no está de acuerdo con la respuesta recibida.

7. Se acoge la petición de reconsideración del 25 de agosto de 2025.

De igual manera, dispuso lo siguiente:[8]

[...] Luego de investigar las alegaciones del recurrente, analizamos el expediente social y criminal. En efecto a raíz de la Ley 85-2022 se actualiz[ó] la Hoja Control de Liquidación de Sentencia en el cual cambi[ó] los delitos, por lo cual en estos momentos está cumpliendo primero el Artículo 93 A (Asesinato en Primer Grado). En este caso del mínimo de la sentencia se cumplirá de forma natural (25 años) según dispone los requerimientos del Reglamento de la Junta de Libertad Bajo Palabra. En cuanto a la bonificación adicional esta se acreditará solo el máximo de sentencia. Según se desprende de la Hoja de Control Sobre Liquidación de Sentencia indica que se le están acreditando bonificaciones adicionales en el máximo de sentencia.[...].

Inconforme aún con la determinación, el 17 de noviembre de 2025, el señor Torrens Andino compareció ante este foro, mediante el recurso de epígrafe y esgrimió los siguientes señalamientos de error:

1. Erró el Departamento de Corrección y Rehabilitación al interpretar que el mínimo de veinticinco (25) años para el delito de asesinato continúa siendo uno de "años naturales", ignorando la enmienda expresa de la Ley 85-2022 que eliminó dicha frase y que, por consiguiente,

---

[8] Véase, Entrada 1, Apéndice 3 del recurso, Anejo I, págs. 1-2, SUMAC-TA. *Resolución.*

permite la aplicación de bonificaciones al mínimo de sentencia.

2. Erró el Departamento de Corrección y Rehabilitación al aplicar un reglamento administrativo incompatible con el estatuto vigente en violación del principio de supremacía de la ley sobre el reglamento y de la doctrina de derogación tácita.

3. Erró el Departamento de Corrección y Rehabilitación al emitir una determinación arbitraria y caprichosa, desprovista de análisis interpretativo alguno sobre el efecto jurídico de la eliminación de "años naturales" por la Ley 85-2022 y sin adjudicar la controversia legal planteada por el recurrente en su solicitud y reconsideración.

El 21 de noviembre de 2025, esta Curia, mediante *Resolución*, concedió a la Oficina del Procurador General hasta el 17 de diciembre de 2025 para presentar su alegato en oposición.

En cumplimiento con lo ordenado, la parte recurrida por conducto de la Oficina del Procurador General, presentó *Escrito en Cumplimiento de Resolución.*

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

**A. *Estándar de Revisión Judicial de Determinaciones Administrativas***

De ordinario los tribunales apelativos debemos otorgar deferencia y respeto a las conclusiones e interpretaciones hechas por las agencias administrativas.[9] *Katiria's Café v. Mun. de San Juan*, 2025 TSPR 33, 215 DPR ___ (2025); *Vázquez et al. v. DACo*, 2025 TSPR 56, 216 DPR ___ (2025); *OEG v. Martínez Giraud*, 210 DPR 79 (2022); *Pérez López v. Depto. Corrección*, 208 DPR 656, 673 (2022)[10]. No obstante, tal norma no es absoluta, es por lo que, nuestro Máximo Foro ha enfatizado que no podemos imprimirle un

---

[9] *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018); *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016).
[10] *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019).

sello de corrección, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho. De igual manera, la más Alta Curia ha expresado que, la consideración otorgada por los tribunales no equivale a una renuncia de nuestra función revisora. *Vázquez et al. v. DACo*, supra.

En *Torres Rivera v. Policía de Puerto Rico*, supra, pág. 628, nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la forma siguiente:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero tal deferencia cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales.[11]

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad. *Katiria's Café v. Mun. de San Juan*, supra; *OEG v. Martínez Giraud*, supra, pág. 89.[12] Bajo este criterio, se debe dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción. *Íd.*; *Pérez López v. Depto. Corrección*, supra, pág. 673; *OEG v. Martínez Giraud*, supra; *Super Asphalt v. AFI y otros*, supra, pág. 819-820.[13]

Bajo este supuesto, la Sec. 4.5 de la Ley Núm. 38 del 30 de junio de 2017, según enmendada, 3 LPRA 9675, conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), "estableció el marco de revisión judicial de las agencias administrativas". *Rolón Martínez v. Supte. Policía*, supra,

---

[11] Véase *Super Asphalt v. AFI y otro*, supra, págs. 819-820.

[12] Véase también, *Super Asphalt v. AFI y otro*, supra, pág. 820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Torres Rivera v. Policía de PR*, supra, pág. 626.

[13] *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 216 (2012).

pág. 35. La intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas. *Íd.* págs. 35-36; *Katiria's Café v. Mun. de San Juan,* supra; *OEG v. Martínez Giraud,* supra, pág. 90*; Torres Rivera v. Policía de PR,* supra, págs. 626-627; *Nobbe v. Jta. Directores,* supra, pág. 217; Sec. 4.5 de la LPAU, 3 LPRA sec. 9675.

Las determinaciones de hechos contenidas en las decisiones de las agencias, *podrán* ser sostenidas por el tribunal cuando estén basadas en evidencia sustancial que obra en el expediente administrativo. Mientras que, conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. Sección 4.5 de la Ley Núm. 38-2017, 3 LPRA sec. 9675; *Vázquez et al. v. DACo,* supra; *OEG v. Martínez Giraud,* supra, pág. 90-91; *Super Asphalt v. AFI y otro,* supra, pág. 819-820.

Los foros revisores podrán apoyarse en las interpretaciones de las agencias. Sin embargo, dichas interpretaciones "constituyen un acervo de experiencias y criterios informados a los cuales los tribunales y los litigantes bien podrán recurrir a modo de guía" y no avalar irreflexivamente, como se hacía en el pasado. *Vázquez et al. v. DACo,* supra. En casos administrativos el tribunal deberá realizar su tarea con un "*body of experience and informed judgment*" de la agencia, entre otra información a su disposición. *Íd.* De igual manera, los tribunales deberán ejercer un juicio independiente al decidir si una agencia ha actuado dentro del marco de sus facultades estatutarias. *Íd.*

### B. *Privilegio de Libertad Bajo Palabra*

El sistema de libertad bajo palabra se encuentra reglamentado por la Ley Núm. 118 de 22 de julio de 1974, según

enmendada, 4 LPRA secc. 1501 *et seq.* La libertad bajo palabra permite que, una persona que hubiese sido sentenciada a un término de reclusión cumpla la última parte de su sentencia fuera de la institución penal, sujeto a las condiciones que se impongan para conceder dicha libertad. *Benítez Nieves v. ELA et al.*, 202 DPR 818, 825 (2019). Este beneficio tiene el propósito principal de ayudar a los confinados a reintegrarse a la sociedad. 4 LPRA secc. 1503. Además, es un componente del proceso de rehabilitación del confinado. Se considera que mientras disfrutan del mismo están, técnicamente, extinguiendo su condena. *Rivera Beltrán v. JLBP*, 169 DPR 903, 918 (2007) (Sentencia) (Opinión Concurrente de la Juez Asociada Señora Rodríguez Rodríguez).

Ahora bien, la libertad bajo palabra no constituye un derecho a reclamarse, sino que se trata de un privilegio legislativo que descansa en la entera discreción de la JLBP. *Pueblo v. Negrón Caldero*, 157 DPR 413, 420 (2002); *Maldonado Elías v. González Rivera*, 118 DPR 260, 275-276 (1987). En ese sentido, la JLBP podrá imponer las condiciones que entienda necesarias al conceder este privilegio. 4 LPRA secc. 1503; *Benítez Nieves v. ELA et al.*, supra. Lo que implica que, el que goce de dicho privilegio tendrá una libertad cualificada. *Íd.* Las condiciones a imponerse, restringen las actividades del liberado más allá de las restricciones comunes que se le imponen por ley a cada ciudadano. *Íd.* Véase también, *Morrissey v. Brewer*, 408 US 471, 478 (1972).

La Ley Núm. 118-1974, *supra*, ha sufrido un sinnúmero de enmiendas, con el fin de expandir la jurisdicción de la JLBP y dar paso a que más personas confinadas puedan beneficiarse del privilegio de libertad bajo palabra.

De esta manera, se cumple con la política pública constitucional de la rehabilitación que debe traducirse en un andamiaje penal más humano en la implementación de las penas.

Véase, *Exposición de Motivos* de la Ley Núm. 85 de 11 de octubre de 2022 (en adelante, Ley Núm. 85-2022).

La primera enmienda significativa ocurrió con la aprobación de la Ley Núm. 85-2022, *supra*. Por medio de esta, quedó enmendado el Artículo 3 de la Ley Núm. 118-1974, *supra*, así como el Artículo 308 del Código Penal de Puerto Rico, 33 LPRA § 5416. A grandes rasgos, los cambios implementados incluyeron unos parámetros más amplios para que las personas confinadas pudieran ser consideradas para el privilegio de libertad bajo palabra, ello según los delitos cometidos y las penas impuestas. Dichas modificaciones aplicaban de manera retroactiva, independientemente del código penal o la ley penal vigente al momento de los hechos constitutivos de delito, siempre y cuando resultaran favorables para la persona confinada.

Cónsono con dichas enmiendas, actualmente, en su Artículo 308, el referido estatuto dispone lo siguiente:

> Toda persona convicta bajo las disposiciones de este Código podrá ser considerada para libertad bajo palabra por la Junta de Libertad Bajo Palabra al cumplir el setenta y cinco por ciento (75%) del término de reclusión impuesto. Este cómputo nunca excederá de quince (15) años cuando se trate de un adulto o de cinco (5) años cuando se trate de un menor sentenciado y procesado como adulto en delitos para los cuales al realizarse el cómputo jurisdiccional para cualificar ante la consideración de la Junta de Libertad Bajo Palabra este sea mayor a lo requerido para delitos con pena fija señalada en el tipo de cincuenta (50) años.
>
> En delitos graves cuyo término de reclusión señalada en el tipo sea de cincuenta (50) años, la persona podrá ser considerada para libertad bajo palabra por la Junta de Libertad Bajo Palabra al cumplir quince (15) años de su sentencia o cinco (5) años si se trata de un menor de edad procesado y sentenciado como adulto.
>
> **En caso de la persona convicta de asesinato en primer grado, un delito cuya pena sea de noventa y nueve (99) años o reincidencia habitual la persona podrá ser considerada para libertad bajo palabra por la Junta de Libertad Bajo Palabra, al cumplir veinticinco (25) años de su sentencia, o diez (10) años, si se trata de un menor de edad procesado y sentenciado como adulto.** Las personas convictas al

amparo del inciso (c) del Artículo 93 estarán excluidas del privilegio de libertad bajo palabra.

**En aquellos procesos judiciales en que se encuentre al acusado culpable por más de un delito y se le imponga una sentencia a ser cumplida de manera consecutiva, la persona convicta tendrá derecho a cualificar para libertad bajo palabra al cumplir con el término concerniente a la pena mayor recibida por alguno de los delitos cometidos. Cuando más de uno de los delitos cometidos conlleve la misma pena, la persona convicta cualificará para el beneficio de libertad bajo palabra con el mero hecho de haber cumplido con el término de una de ellas.** Lo dispuesto en este párrafo será de aplicabilidad, independientemente si la Ley en virtud de la cual resulta convicto, sea una Ley Penal Especial.

[…] 33 L.P.R.A. § 5416. (Énfasis nuestro)

No obstante, posteriormente se aprobó la Ley Núm. 85-2024, *supra,* a los fines de aclarar y delimitar el alcance de la aprobada Ley Núm. 85-2022, *supra.* Mediante las nuevas enmiendas, se dispuso que el cómputo del tiempo mínimo para ser elegible para el privilegio de libertad bajo palabra no sería aplicable a ciertas personas, dependiendo el delito cometido.

### i. *Carta Circular Núm. 2023-02*

El 15 de junio de 2023, el Departamento de Corrección y Rehabilitación emitió la Carta Circular Núm. 2023-02 donde expuso el procedimiento a seguir sobre el cumplimiento de la Ley Núm. 85-2022, *supra.* En específico, esbozó el procedimiento a llevar a cabo a la hora de evaluar el computo de sentencias de la población correccional aplicando las disposiciones de la Ley Núm. 85-2022, *supra.* Dicho procedimiento es el siguiente:

1. Verificarán todos los expedientes criminales de toda la población correccional.

2. Evaluarán el documento titulado "Hoja de Control sobre Liquidación de Sentencias". De observar más de un término computado, identificarán la sentencia base mayor.

3. Tomarán en cuenta las sentencias de manera individual. Las sentencias que son consecutivas no deberán estar consolidadas en la nueva revisión. De estar consolidadas, el resultado conllevaría a identificar una pena mayor que no necesariamente

sea la correcta para el cómputo final a los fines requeridos por la ley.

4. Los nuevos cómputos se harán en una nueva "Hoja de Control sobre Liquidación de Sentencia", la cual se identificará como una "Reliquidación".

5. **En virtud de lo anterior, en la nueva "Hoja de Control sobre Liquidación de Sentencia", identificarán la pena mayor, y se observará el mínimo de esa sentencia. en el caso de que el mínimo sea mayor de 15 años, se atemperará a 15 años, salvo en los casos sentenciados por asesinato en primer grado, que el mínimo será de 25 años naturales.**

6. Computarán en primer orden la pena mayor con el mínimo. Cuando el mínimo de la pena mayor sea menor de 15 años, no se efectuará cómputo adicional. Solo se pondrá en primer orden.

7. Todo delito cumplido en su totalidad (máximo y mínimo) será eliminado de la Hoja de Liquidación de Sentencia.

8. Adjudicarán las bonificaciones adicionales al nuevo cómputo en el máximo y en el mínimo, exceptuando los casos de asesinato en primer grado, que solo bonifican el máximo.

9. Si el delito de la pena mayor (primer orden) excluye las bonificaciones adicionales no podrán ser acreditadas, aunque el confinado tenga tiempo adjudicado por concepto de trabajo y/o estudios.

10. Computarán los demás términos de las sentencias consecutivas en el mismo orden de la hoja de liquidación anterior y no se computarán mínimos adicionales.

11. Se considerará y documentará solamente un mínimo, el cual responderá a la pena mayor.

12. Evidenciarán, además, en la nueva "Hoja de Control sobre Liquidación de Sentencia" lo siguiente:

- Detainer
- Warrant
- Pena Especial

13. Se identificará en el registro de control (libro del área socio penal) cada uno de los casos reliquidados. Además, se indicará la fecha del cumplimiento del mínimo, con el fin de tener de manera accesible la información.

14. Se documentará en el expediente criminal todo el proceso aquí expresado, realizando las anotaciones correspondientes del ejercicio reliquidado en el

orden de los delitos que se adjudicaron o que ya contenía sus mínimos cumplido con anterioridad.

15. Una vez el empleado de la Sección de Récord culmine el proceso descrito, referirá la nueva "Hoja de Control sobre Liquidación de Sentencia" a la Unidad de Servicios Sociopenales, para las acciones y los referidos correspondientes, según nuestras leyes y reglamentos.

16. Todos los confinados serán orientados sobre este procedimiento. (Énfasis nuestro).

## C. *Bonificaciones*

Nuestra más Alta Curia ha expresado que la "la bonificación se refiere a la posibilidad de que el Estado considere cumplida la pena de reclusión del confinado antes de cumplir su condena." *Carrasquillo Román v. Institución Correccional Bayamón*, 204 DPR 699, 706 (2020). Esta tiene como propósito el "fomentar la buena conducta, rehabilitación y readaptación del confinado a las normas de convivencia social que han de afrontar una vez salgan de la cárcel". *Íd.* citando a *Pueblo v. Pizarro Solís*, 129 DPR 911, 920 (1992).

Mediante la aprobación del Plan de Reorganización Núm. 2 de 2011, conocido como el Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011 (Plan de Reorganización), se derogó la Ley Orgánica de la Administración de Corrección, Ley Núm. 116 de 22 de julio de 1974 (Ley Núm. 116), 4 LPRA sec. 1101 *et seq.* Véase *Carrasquillo Román v. Institución Correccional Bayamón*, supra, págs. 709-710.

La derogada Ley Núm. 116, *supra*, estableció una serie de parámetros para la acreditación de rebajas en la sentencia impuesta a los confinados de nuestras instituciones penales, por buena conducta, trabajo, estudios y servicios prestados en la institución. Específicamente, el Artículo 16 de la precitada legislación proveía para la acreditación de bonificaciones por buena conducta y asiduidad a los confinados independientemente de la sentencia que

estuvieran cumpliendo. Mientras, el Artículo 17 reconocía las bonificaciones de carácter discrecional por concepto de estudio y trabajo.

Con la aprobación del precitado Plan de Reorganización, se decretó "como política pública del Gobierno de Puerto Rico la creación de un sistema integrado de seguridad y administración correccional donde las funciones y deberes se armonicen en un proceso facilitador a la imposición de penas y medidas de seguridad, así como a la custodia de los ciudadanos que han sido encontrados incursos en la comisión de un delito o falta y que establezcan procesos de rehabilitación moral y social del miembro de la población correccional o transgresor, a fin de fomentar su reincorporación a la sociedad". Véase, Artículo 2 del Plan de Reorganización.

El Capítulo IV del Plan de Reorganización Núm. 2-2011, el cual establece el funcionamiento del Departamento de Corrección y Rehabilitación, dispone para la rebaja de la sentencia por buena conducta y asiduidad observada por los miembros de la población correccional durante su reclusión. Provee, además, abonos a las sentencias por trabajos realizados en alguna industria, por trabajos o servicios en la institución correccional, en labores agropecuarias, por estudios o en la prestación de servicios excepcionalmente meritorios o en el desempeño de deberes de suma importancia en relación con funciones institucionales. *Íd.*

Por su parte, el Artículo 12 del Plan de Reorganización establece lo siguiente:

> **Artículo 12. — Bonificaciones por trabajo, estudio o servicios.** (3 L.P.R.A., Ap. XVIII, Art. 12)
>
> A toda persona sentenciada a cumplir pena de reclusión por hechos cometidos con anterioridad o bajo la vigencia del Código Penal de Puerto Rico vigente, en adición a las bonificaciones autorizadas en el Artículo anterior, el Secretario o el Presidente de la Junta de Libertad Bajo Palabra, según aplique, podrán conceder

bonificaciones a razón de no más de cinco (5) días por cada mes en que el integrante de la población correccional o liberado por la Junta de Libertad Bajo Palabra esté empleado en alguna industria o que esté realizando estudios como parte de un plan institucional, bien sea en la libre comunidad o en el establecimiento penal donde cumple su sentencia, y preste servicio a la institución correccional durante el primer año de reclusión. Por cada año subsiguiente, podrá abonarse hasta siete (7) días por cada mes.

Si la prestación de trabajo o servicios por el integrante de la población correccional o liberado por la Junta de Libertad Bajo Palabra fuere de labores agropecuarias, el Secretario deberá conceder bonificaciones mensuales hasta un monto no mayor de siete (7) días durante el primer año de cumplimiento de su sentencia y hasta un monto no mayor de diez (10) días mensuales durante los períodos de cumplimiento de su sentencia subsiguientes al primer año.

Las bonificaciones antes mencionadas podrán efectuarse durante el tiempo en que cualquier persona acusada de cometer cualquier delito hubiere permanecido privada de su libertad, sujeto a lo dispuesto en los párrafos anteriores.

Las bonificaciones dispuestas podrán hacerse también por razón de servicios excepcionalmente meritorios o en el desempeño de deberes de suma importancia en relación con funciones institucionales, según disponga el Secretario mediante reglamentación a esos efectos.

**Disponiéndose, que todo miembro de la población correccional sentenciado a la pena de noventa y nueve (99) años antes del 20 de julio de 1989, incluyendo aquel miembro de la población correccional cuya condena haya dado lugar a una determinación de reincidencia agravada o de reincidencia habitual, ambas situaciones conforme al Código Penal derogado, será bonificado a tenor con lo dispuesto en este Artículo.** (Énfasis nuestro)

Por otro lado, el Reglamento Interno de Bonificación por Buena Conducta, Trabajo, Estudio y Servicios Excepcionalmente Meritorios del 28 de octubre de 2020 del Departamento de Corrección y Rehabilitación (Reglamento de Bonificación), se adoptó bajo las disposiciones del Plan de Reorganización Núm. 2-2011.

Toda persona recluida en una institución correccional deberá observar una conducta que le permita funcionar adecuadamente en la misma y que a su vez, le vaya preparando para convivir en la libre comunidad. Véase, Introducción del Reglamento de Bonificación.

En lo pertinente, el Art. 8 del Reglamento de Bonificación establece que, a toda persona sentenciada a cumplir pena de reclusión, el Secretario del Departamento de Corrección, o su representante le podrá conceder abonos por trabajos, estudios o servicios. El mismo artículo dispone que, tal bonificación será acreditada o rebajada al mínimo y máximo de la sentencia en aquellos casos que legalmente corresponda. Art. 8 del Reglamento de Bonificación, *supra.*

No obstante, el Art. 9 sobre normas para la concesión de abonos adicionales dispone lo siguiente respecto a la aplicación de la bonificación:

**ARTÍCULO IX - NORMAS PARA LA CONCESIÓN DE ABONOS ADICIONALES**

Para constituir esta medida de beneficio adicional, se aplicarán las siguientes normas generales en la implantación de esta disposición:

1. **La bonificación adicional afectará tanto el mínimo como el máximo de cada sentencia**. En el caso de miembros de la población correccional sentenciados por el delito de Asesinato en Primer Grado luego del 20 de julio de 1989, **solo serán acreedores de bonificación adicional al máximo de la sentencia**. El **mínimo de sentencia en estos casos** bajo el Código Penal de 1974 y 2004, **corresponde a veinticinco (25) años naturales** si la persona hubiera sido adulta al momento de la comisión del delito y diez (10) años como menor y exclusivamente para efectos de referido ante la Junta de Libertad Baj[o] Palabra. Baj[o] el Código Penal del año 2012, el mínimo de sentencia es de treinta y cinco (35) años naturales y veinte (20) años si la persona era menor de edad al momento de la comisión del delito.

[…] (Énfasis nuestro).

Esbozada la normativa jurídica que enmarca la controversia de epígrafe, procedemos a resolver.

**III**

En su primer señalamiento de error, el señor Torrens Andino arguyó que erró el DCR al interpretar que el mínimo de veinticinco (25) años para el delito de asesinato continúa siendo uno de "años

naturales" y al ignorar la enmienda que produjo la Ley Núm. 85-2022 en donde se eliminó dicha frase.

En su segundo señalamiento de error, el recurrente señaló que, el reglamento administrativo es incompatible con el estatuto vigente y que ello viola el principio de supremacía de la ley sobre el reglamento y la doctrina de derogación tácita.

En su tercer señalamiento de error, el señor Torrens Andino sostuvo que, el DCR incidió al emitir una determinación arbitraria y caprichosa sin análisis de la eliminación del término "años naturales" y sin adjudicar la controversia legal planteada en su solicitud y posterior reconsideración.

Por encontrarse intrínsecamente relacionados, discutiremos los señalamientos de error de forma conjunta.

Adelantamos que, no le asiste la razón. Veamos.

Según surge del expediente administrativo, la parte recurrente presentó una *Solicitud de Remedio Administrativo*. Por medio de la anterior, solicitó que se le acreditaran bonificaciones por estudio y trabajo en el cómputo mínimo de su Hoja de Liquidación de Sentencia. Sostuvo que, la Ley Núm. 85-2022, *supra*, dispone que en casos donde una persona convicta de asesinato en primer grado, un delito cuya pena sea de noventa y nueve (99) años o reincidencia habitual podrá ser considerada para libertad bajo palabra por la JLPB al cumplir veinticinco (25) años de su sentencia. Asimismo, argumentó que, el aludido estatuto eliminó la frase "años naturales" que previamente estaba expresada en el Art. 3 de la Ley Núm. 118 de 22 de julio de 1974, según enmendada. Entendió que, ya no se requería el cumplimiento de años naturales para que la JLPB adquiriera jurisdicción de su caso. Arguyó que, la enmienda antes descrita tuvo el efecto de alterar el Art. IX del Reglamento de Bonificación, *supra*. Aseveró que, dicho artículo dispone que, en los casos de personas sentenciadas por el delito de asesinato en primer

grado, solo serán acreedores de bonificación adicional al máximo de la sentencia. Igualmente, establece que, el mínimo de sentencia en los casos bajo el Código Penal de 1974 y 2004, corresponde a veinticinco (25) años naturales. Si embargo, a su juicio, bajo la Ley Núm. 85-2022, *supra*, al eliminar la frase "años naturales", el Art. IX del Reglamento de Bonificación, *supra*, quedó inoperante ya que se elimina el requisito de naturalidad que exigía.

Posteriormente, el DCR emitió *Respuesta al Miembro de la Población Correccional*, en la cual determinó que, su caso sería considerado para identificar bonificaciones aplicables y que, si realiza trabajo o estudios se le acreditarán los días conforme al Reglamento de Bonificación, *supra*. En desacuerdo, la parte recurrente presentó *Solicitud de Reconsideración*. Finalmente, el DCR emitió la *Resolución* cuya revisión nos atiene, donde confirmó la *Respuesta al Miembro de la Población Correccional* y expresó que, las bonificaciones adicionales únicamente se le continuarán acreditando al máximo de sentencia.

De acuerdo al derecho reseñado, la Ley Núm. 85-2022, *supra*, fue estatuida expresamente con el propósito de enmendar el Art. 3 de la Ley Núm. 118-1974, *supra*, y el Art. 308 del Código Penal de Puerto Rico. La referida ley presentó unos cambios que incluyeron parámetros más amplios para que las personas confinadas pudieran ser consideradas para el privilegio de libertad bajo palabra, según los delitos cometidos y las penas impuestas. En lo aquí pertinente, la enmienda al Art. 308 dispuso que:

> […]
>
> **En caso de la persona convicta de asesinato en primer grado, un delito cuya pena sea de noventa y nueve (99) años o reincidencia habitual la persona podrá ser considerada para libertad bajo palabra por la Junta de Libertad Bajo Palabra, al cumplir veinticinco (25) años de su sentencia, o diez (10) años, si se trata de un menor de edad procesado y sentenciado como adulto.** Las personas convictas al

amparo del inciso (c) del Artículo 93 estarán excluidas del privilegio de libertad bajo palabra.

**En aquellos procesos judiciales en que se encuentre al acusado culpable por más de un delito y se le imponga una sentencia a ser cumplida de manera consecutiva, la persona convicta tendrá derecho a cualificar para libertad bajo palabra al cumplir con el término concerniente a la pena mayor recibida por alguno de los delitos cometidos. Cuando más de uno de los delitos cometidos conlleve la misma pena, la persona convicta cualificará para el beneficio de libertad bajo palabra con el mero hecho de haber cumplido con el término de una de ellas.** Lo dispuesto en este párrafo será de aplicabilidad, independientemente si la Ley en virtud de la cual resulta convicto, sea una Ley Penal Especial.

[…] 33 L.P.R.A. § 5416. (Énfasis nuestro)

Según podemos observar, la Ley Núm. 85-2022, *supra*, de forma alguna impacta o modifica el Plan de Reorganización, *supra*, ni el Reglamento de Bonificaciones, *supra*, que son las guías para la implementación y regulación de las bonificaciones. Como bien expresó la parte recurrida, el hecho de que la Ley Núm. 85-2022, *supra*, no incluya la frase "años naturales" no incide en el análisis que el DCR realiza al calcular las bonificaciones y las modificaciones en las Hojas de Control sobre Liquidación de Sentencia. Lo anterior, puesto que, dicho análisis se encuentra amparado en el Art. 12 del Plan de Reorganización, *supra*, el Reglamento de Bonificaciones, *supra* y la Carta Circular *Núm. 2023-02*.

En la controversia que nos ocupa, la parte recurrente no presentó evidencia suficiente que demostrara que la parte no actuó conforme a derecho en su *Resolución*. Cónsono con lo anterior, la parte recurrente no nos colocó en posición de variar la decisión del ente administrativo.

Ante la ausencia de una actuación arbitraria, ilegal, irrazonable o que constituya un abuso de discreción por parte de la

agencia administrativa, razonamos que resulta innecesario que intervengamos con su determinación.[14]

**IV**

Por los fundamentos que anteceden, se *confirma* la determinación recurrida.

Notifíquese a las partes, al Procurador General y al Secretario del Departamento de Corrección y Rehabilitación. El Administrador de Corrección deberá entregar copia de esta *Sentencia* al confinado, en cualquier institución donde este se encuentre.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[14] *Pérez López v. Depto. Corrección*, supra, pág. 673; *OEG v. Martínez Giraud*, supra, pág. 89; *Super Asphalt v. AFI y otros*, supra, pág. 819-820.